UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JUDY A. GRANTLIN,

    Plaintiff,

v().                                      CASE NO. 8:06-CV-1643-T-30EAJ

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

    Defendant.
_____/

# FINAL ORDER

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner) denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments under the Act.

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Therefore, pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405 (g) (2003). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979) (citations omitted).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

Plaintiff filed her application for DIB and SSI on July 16, 2001, with an alleged onset of disability of June 29, 2001. (T 63, 340.) At the November 20, 2003 administrative hearing, Plaintiff's attorney indicated that the alleged onset date being pursued was February 15, 2002, and Plaintiff's application was so amended.[2] (T 14.) Plaintiff claims disability due to

---

[2] This amendment was in response to the ALJ's finding that Plaintiff had engaged in substantial gainful activity after March 2, 2001. (T 16.)

hepatitis C, left knee meniscus tear, hypertension, right hand carpal tunnel syndrome, bilateral feet pain, pain and numbness in legs, confusion and goiter. Plaintiff was forty-seven years old at the time of the hearing with a sixth grade education. Her past work experience was as a maid, cook, kitchen manager, fruit picker and crab sorter. (T 15.) The ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged amended onset of disability. (T 24.)

Plaintiff's application was denied on October 18, 2001, (T 40) and was denied on reconsideration. (T 44.) Following the administrative hearing, the ALJ issued his decision on February 25, 2004, that Plaintiff was not disabled within the meaning of the Act. (T 14-25.) In the decision denying benefits, the ALJ found that Plaintiff has alcohol abuse history, hepatitis C, left patellar meniscal tear, computerized axial tomograph ("CTS") and goiter, all "severe" impairments under the Act. (T 17, 24.) The ALJ concluded that Plaintiff has the residual functional capacity to perform a significant range of light work. Relying on the testimony of a vocational expert ("VE"), the ALJ concluded that although Plaintiff could not perform her past work, there are a significant number of jobs in the national economy that she could perform, including cashier, toll taker, and small products bench assembler. (T 24-25.)

Plaintiff states four grounds for relief: (1) the ALJ erred in not considering the Plaintiff's subjective symptoms in determining severity; (2) the ALJ erred in determining the Plaintiff's RFC;  (3) the ALJ erred in mechanically applying the age category of the Medical

Vocational Guidelines due to Plaintiff's borderline age; and (4) the ALJ erred in finding that the Plaintiff has the ability to perform other work in the national economy. (Dkt. 114.) Because grounds two and four are intertwined, Plaintiff's arguments on these issues will be addressed in conjunction.

## II.

**A.**     The first issue addresses the ALJ's findings regarding Plaintiff's severe impairments. Plaintiff challenges the ALJ's evaluation of her credibility and the combined effect of her impairments. According to Plaintiff, if her testimony were credited, along with the medical records, she would have been found disabled within the meaning of the Act. (Dkt. 14 at 4-6.) This argument also encompasses an implicit assertion by Plaintiff that the ALJ failed to credit Plaintiff's treating physicians' opinions at Tampa General Hospital ("TG") that Plaintiff is disabled. (Dkt. 14 at 6.)

Regarding Plaintiff's challenge to the ALJ's evaluation of the combined effect of her impairments, the ALJ acknowledged Social Security regulations defining a medically determinable impairment or "combination of impairments" as "severe" if it significantly limits an individual's ability to do basic work activities. (T 16.) (citation omitted). The ALJ also cited Social Security regulations as requiring that once one or more severe impairments are determined, "all medically determinable impairments must be considered in the remaining steps of the sequential analysis." Id. (citation omitted). Finally, the ALJ specified that certain of Plaintiff's impairments were severe but were not severe enough "to meet or

medically equal, *either singly or in combination*" one of the listed impairments. (T 17.) (emphasis added).

The ALJ's written decision shows that he did consider the combined effects of Plaintiff's impairments. The ALJ's finding that Plaintiff had severe impairments but that the impairments were not severe enough, either singly or in combination, is sufficient to discharge the Commissioner's obligation to consider impairments in combination. Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986). Accordingly, Plaintiff's argument that the ALJ failed to consider his impairments in combination is without merit.

Regarding Plaintiff's subjective complaints, including pain, they are analyzed according to well-established legal standards provided by the case law and the Social Security regulations.

It is incumbent on the ALJ to make credibility findings as to a claimant's testimony. See generally Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). The Eleventh Circuit has established a three-part pain standard to use when evaluating a claimant's subjective complaints of pain. A plaintiff must show: (1) evidence of an underlying medical condition, and either (2) the medical evidence substantiates the severity of the pain from the condition, or (3) that the condition is of sufficient severity that it would be reasonably expected to produce the pain alleged. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted). This standard is consistent with Social Security regulations which provide that a claimant may establish a disability through subjective testimony of pain if "medical signs or findings show that there is a medical condition that could be reasonably expected to produce

those symptoms." Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (citing 20 C.F.R. §§ 404.1529, 416.929).

"A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." Foote, 67 F.3d at 1562 (citation omitted). Similarly, it is the Commissioner's responsibility to draw inferences from the evidence, and those inferences will not be overturned if supported by substantial evidence. Davis v. Apfel, 93 F. Supp. 2d 1313, 1316 (M.D. Fla. 2000) (citation omitted). The ALJ need not specifically cite to the Eleventh Circuit pain standard if the ALJ's findings and discussions indicate that he has applied the proper standard. See Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002). The ALJ must cite specific reasons for discrediting a plaintiff's subjective complains of pain. See Allen v. Sullivan, 880 F.2d 1200, 1203 (11th Cir. 1989) (the ALJ properly determined that a plaintiff's subjective complaints were not fully credible after stating three specific reasons for discrediting plaintiff's complaints that were borne out in the record).

The ALJ adequately referred to the applicable law in the decision. (T 18, 20.) The only question remaining is whether the application of the law to the facts is supported by substantial evidence in the record as a whole.

At the outset of the written decision, the ALJ discussed Plaintiff's testimony at the hearing regarding her limitations, her daily activities, and her ability to walk (only short distances, with an assistive device), to stand (up to 15 to 20 minutes) as well as her medications including Percocet which Plaintiff said caused drowsiness. (T 15-16.)

The ALJ further addressed an opinion rendered by hospital clinicians on December

11, 2002, that Plaintiff was "medically disabled indefinitely." (T 19, 21.) Characterizing the opinion as "unique" because Plaintiff had received medical permission to work earlier in the year and supported by symptoms rather than objective records such as clinical or laboratory findings, the ALJ discounted the opinion. Id. The ALJ also observed that the opinion was rendered by a non-specialist who saw Plaintiff on only several occasions. Id. Elsewhere in the decision, the ALJ repeated that the restrictions provided by the hospital were based largely on Plaintiff's complaints. (T 21.)

Regarding Plaintiff's back problems, the ALJ stated that laboratory testing showed only mild arthritic changes at most, little or no soft tissue injury, without atrophy or serious motor loss, and that range of motion testing was not "extreme." Id. Additionally, in July 2002, Plaintiff's treating orthopedist had cleared her to work with a ten-pound lifting restriction. Id. The ALJ discussed Plaintiff's complaints of CTS problems, finding that the medical records did not support an overwhelming and continuous-in-scope problem. (T 19.) The ALJ noted Plaintiff's complaint of right-hand CTS in August 2001, but that Plaintiff did not otherwise mention her hands or wrist or cite upper limb troubles at follow-up appointments. (T 20.)

Regarding Plaintiff's lower extremity difficulties, Plaintiff complained of limb pains, in particular in her knees, wrists, and hip. (T 20.) The ALJ found that "the hip and ankle portion of [Plaintiff's] complaints are rarely mentioned" in the medical records. (T 19.) The ALJ noted the testing of Plaintiff's legs in January and September 2003 because of "burning soles." (T 20.) Further, in January 2003, Plaintiff primarily complained of right knee pain

as opposed to her left knee, feet, or hips. Id. The ALJ noted Plaintiff's specific complaints of "radiating back and neck aches, plus some fatigue from her liver . . . limb pains, in particular in her knees, but also in her wrists and hip . . . as well as the tendency to drop things." (T 20.) However, the ALJ found these symptoms undercut by other evidence as to their severity, concluding that Plaintiff was not precluded from performing "limited light duties." (T 21.) The ALJ discussed the Plaintiff has not always followed medical advice, which raised doubts as to the intensity of her symptoms. (T 20.)

The court finds that the ALJ's credibility analysis is flawed because the ALJ failed to explain why the ALJ rejected Plaintiff's testimony regarding the use of a walker or knee brace to ambulate. In discussing that Plaintiff's only persistent trouble stems from her lower extremities, the ALJ mentions that Plaintiff is using a walker. (T 19.) As discussed in more detail in part B, infra, the ALJ's RFC analysis is also flawed. Accordingly, the court finds that remand is necessary for the ALJ to properly consider the Plaintiff's alleged use of a walker and knee brace in assessing her credibility.[3]

**B.**     As previously noted, Plaintiff's second and fourth arguments are intertwined and will therefore be addressed together. First, Plaintiff argues that the ALJ erred in determining

---

[3] Regarding Plaintiff's argument that the ALJ failed to consider records from July 2004 of Emma Bautista-Ocampo, M.D. ("Dr. Ocampo") and Suman Bhat, M.D. ("Dr. Bhat"), both of whom noted that Plaintiff was disabled and could not maintain gainful employment (T 367-68), the court cannot consider this evidence because it was not before the ALJ at the time of the decision. This evidence was submitted to the Appeals Council, which incorporated the evidence into the record. (T 8.) When the Appeals Council has denied review after considering new evidence, and a claimant challenges the ALJ's decision denying benefits but not the Appeals Council's decision denying review, this court does not consider the new evidence submitted to the Appeals Council but rather, only the evidence actually presented to the ALJ. See Ingram v. Comm'r of Social Security, ___ F.3d ___, No. 06-14602, 2007 WL 2385076, **8-11 (11th Cir. Aug. 23, 2007).

Plaintiff's RFC. Specifically, Plaintiff argues that restrictions imposed by the ALJ's on Plaintiff's RFC are inconsistent with Plaintiff's impairments and the definition of light work in the ALJ's decision. (Dkt. 14 at 7.) Further, Plaintiff contends that the hypothetical posed to the VE conflicted with the ALJ's own finding regarding Plaintiff's lifting restrictions.

A claimant's RFC is the most that a claimant can still do despite her physical and mental limitations that affect the claimant's ability to perform work-related tasks. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The determination of a claimant's RFC is a medical determination reserved for the Commissioner. See generally 20 C.F.R. §§ 404.1545(a), 404.1546, 416.945.

Before determining Plaintiff's RFC, the ALJ discussed Plaintiff's medical records from TG. The ALJ noted that the TG staff has seen Plaintiff mostly for routine ailments, but also for recurrent joint, abdominal, and nerve pains, along with a positive diagnosis for hepatitis B and C germs. (T 16.) On July 17, 2002, Plaintiff underwent a meniscectomy for a patellar meniscal tear, with ligament sprain, chondromalacia, and degenerative changes on her left knee. (T 16, 218-21.) Plaintiff visited TG on August 22, 2003, where her knees were re-injected and she was prescribed a knee brace for painful patellae with crepitus sounds. (T 16, 329-30.) The ALJ noted that on November 4, 2003, the TG clinic noted small swelling and ambulation and prescribed Plaintiff a walker. (T 16, 331.)

After discussing diagnostic tests performed on Plaintiff such as a liver test, radiography, and blood studies, the ALJ noted that the ailments connected to her hepatic disease were unaccompanied by appreciable symptoms and signs and did not seem to

seriously impact her daily functioning. (T 17.) Then, the ALJ stated that "only the orthopedic and mood disorders impose any serious limitations on day-to-day employment." (T 18.)

The ALJ adopted the finding of a Dr. Jackson from the Florida Orthopedic Institute who cleared Plaintiff to work with a 10-pound lifting restriction. (T 19, 224.) The ALJ further noted, regarding Plaintiff's complaints of upper arm pains, that "[t]here was little evidence (if any) of shoulder or forearm pathology to prevent lifting at least the ten pounds cited by Dr. Jackson . . . . [Plaintiff] might be best advised to avoid repetitive reaching, handling, pushing or pulling, but the physicians did not so specifically state [Exhibits 9F & 11F]." (T 19.) However, the court notes that Dr. Jackson's assessment of Plaintiff was completed on July 11, 2002, over one year before Plaintiff's knee surgery and subsequent follow-up visits to TG.

The ALJ then discussed Plaintiff's persistent problems with her lower extremities and concluded that sitting and standing in alternation, with only occasional use of the limbs for unusual postures was warranted, but did not accept that Plaintiff is incapable of all ambulation. (T 19-20.) The ALJ again noted at this point Plaintiff's use of a walker, stating "[s]he is on a walker and brace, but it is not clear that she actually has seriously injured herself from falling." (T 19.)

The ALJ concluded that Plaintiff's RFC encompassed light work with a sit/stand option. (T 21.) In determining that Plaintiff had the RFC to perform a significant range of light work, the ALJ imposed the following restrictions:

> [Plaintiff] can lift ten pounds occasionally and frequently, with a sit/stand

>option, sit, stand, and walk for 6-8 hours per work day, performing work with limited [occasional] unusual postures (stooping, crouching, balancing, kneeling, crawling, and climbing), no concentrated hazards (driving, heights, moving machinery), or sub-optimal atmospheric conditions (no hepato-toxins) and can engage in simple, routine, (low-stress) tasks in a safe, clean, environment.

(T 21, 24.)

Plaintiff argues that because the Regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds and jobs in this category require a good deal of walking or standing, the ALJ's RFC analysis was in error as Plaintiff ambulates with a walker which requires the use of both hands to ambulate. Plaintiff argues that because she requires the walker, she cannot perform a job requiring any carrying, a good deal of walking, or any position that requires use of leg-foot controls.

As previously discussed, the ALJ noted that Plaintiff was prescribed a walker and that she is on a walker. (T 16, 19.) Also, Plaintiff was using the walker at the November 2003 administrative hearing, and the ALJ specifically noted that Plaintiff had a walker with her. (T 384.) Questioning Plaintiff about her use of the walker and a knee brace, the ALJ asked:

>ALJ: Okay. Does the walker have wheels or --
>
>Clmt: Yes, sir.
>
>ALJ: It does, ok.
>
>Clmt: It has wheels.
>
>ALJ: And you say you've also got a brace on your leg?

> Clmt: Yes, sir.
>
> ALJ: And it looks like you're pointing to the right leg?
>
> Clmt: Yes, sir.
>
> ALJ: And is the brace – is it around the knee or –
>
> Clmt: No, it's for my whole leg because the pain – and for my knee up here to keep my leg straight because when I bend it, that's when it hurts the most. So they got metal balls in it –

(T 385.) The ALJ continued to question Plaintiff about the brace and the restrictions it imposed on Plaintiff's movement. Id.

However, in his opinion the ALJ did not discuss what impact the walker (or brace) has on Plaintiff's RFC. Implicit in the ALJ's finding that "[she] is on a walker . . . but it is not clear that she actually has seriously injured herself from falling" (T 19) is that Plaintiff does not require a walker or brace, but the ALJ fails to state what medical evidence supports this finding.

Although the ALJ allowed for a sit/stand option, the RFC finding also included an ability to sit, stand, and walk for 6-8 hours per workday. (T 21.) This finding is arguably inconsistent if Plaintiff does need a walker and brace. The ALJ's cursory mention of Plaintiff's need for a brace or walker to ambulate is insufficient in light of the RFC assigned. Remand is required for the ALJ to make an explicit finding on whether Plaintiff needs a walker or brace to ambulate and how that can be reconciled with her RFC.

Plaintiff also contends that the ALJ's analysis is flawed because the hypothetical question propounded by the ALJ provided a lifting limitation of 20 pounds and the ALJ's

RFC determination limited Plaintiff to lifting 10 pounds. It is true that the ALJ's RFC assessment included a lifting restriction of "ten pounds occasionally and frequently . . . ." (T 21, 24.) The ALJ also stated that Plaintiff was capable of performing "a significant range of light work."[4] (T 22.) Because the lifting requirements for light work (up to 20 pounds occasionally) exceed the ALJ's RFC determination, there is an inconsistency between the RFC assessment and the first hypothetical question asked of the VE at the hearing. That question included a lifting limitation of 20 pounds occasionally and 10 pounds frequently. (T 408.) In response to this hypothetical question which included other functional limitations, the VE stated that Plaintiff could perform work as a cashier, a toll collector, a bench assembler, and a produce sorter/grader. (T 410.) The ALJ then asked the VE to assume a lifting or carrying limit of no more than 10 pounds. (T 412.) In response, the VE testified that jobs as a toll collector and cashier II would be consistent with that requirement as well as about "fifty percent" of bench assembly jobs. (T 412.)

The inconsistency between the ALJ's RFC determination and some of the vocational testimony could be deemed harmless error. See Brooks v. Barnhart, 133 Fed. Appx. 669, 670 (11th Cir. 2005) (citing 20 C.F.R. § 404.1512(g) (the ALJ, not the VE, determines whether

---

[4] Light work, defined at 20 C.F.R. §§ 404.1567(b), 416.967(b), involves the lifting of not more than twenty pounds occasionally with frequent lifting and carrying of objects weighing up to ten pounds.  The regulations further provide: "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

a specific number of jobs constitutes a significant number in the national economy).[5] However, further fact-finding is necessary regarding Plaintiff's ability to ambulate; even with a sit/stand option, for an eight-hour work day, the ALJ's RFC findings on remand may change. It is therefore unnecessary to resolve this issue. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986).

**C.** The third issue raised is whether the ALJ erred in "mechanistically" applying the medical-vocational guidelines (known as the "Grids"). Plaintiff states that, due to her borderline age at the time of the ALJ's decision (age 49) as well as her lack of formal schooling and inability to read and write, the ALJ should not have relied upon the Grids. For the same reason expressed above, the court declines to reach this issue. Id.

Accordingly and upon consideration, it is **ORDERED AND ADJUDGED** that:

(1) the decision of the Commissioner is **REVERSED** and this case is **REMANDED** for further administrative proceedings consistent with the foregoing; and

(2) the Clerk of Court shall enter final judgment pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) as a "sentence four remand" and close the file, with each party bearing its

---

[5] The Regulations provide that at the fifth step of the sequential evaluation process, the Commissioner is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's] residual functional capacity and vocational factors." 20 C.F.R. § 416.960(c). The VE testified that 200 toll collector jobs, 1,500 cashier jobs, and 3,000 bench assembly jobs were available in the area in which Plaintiff resides. (T 410-11.) Accordingly, even though the VE testified as to only two jobs (as well as "fifty percent" of bench assembly jobs) that Plaintiff could perform with a lifting or carrying limit of no more than 10 pounds, the ALJ would not have erred in finding that Plaintiff could do other work that exists in significant numbers in the national economy if no error existed in the ALJ's RFC analysis. Cf. Allen v. Bowen, 816 F.2d 600, 602 (11th Cir. 1987) (174 small appliance repairman jobs available in the area in which claimant lived was sufficient quantity of jobs to establish the existence of work in significant numbers).

own costs and expenses.

**DONE** and **ORDERED** in Tampa, Florida on September 28, 2007.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>Copies furnished to:</u>
Counsel/Parties of Record

S:\Odd\2006\06-cv-1643.soc sec.wpd